[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 6, 2002
THOMAS K. KAHN
CLERK

————————————

No. 02-10518

————————————

D. C. Docket No. 99-00136-CV-4-WLS-1

LOWE'S HOME CENTERS, INC.,

Plaintiff-Appellant,

versus

OLIN CORPORATION,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Middle District of Georgia

————————————

**(December 6, 2002)**

Before HULL, WILSON and FAY, Circuit Judges.

FAY, Circuit Judge:

Lowe's Home Centers, Inc. ("Lowe's") filed suit against Olin Corporation

("Olin") asserting three claims that, in whole or in part, center around Olin's

alleged failure to properly warn Lowe's of the dangers involved in the storage and

handling of a pool chlorinating product known as Pace Superchlorinator Shock Treatment ("Pace"). The active chemical ingredient in Pace is calcium hypochlorite ("cal-hypo"), a registered pesticide under the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136, *et. seq.* The district court entered summary judgment in favor of Olin based upon this court's decision in *Papas v. Upjohn Co.*, 985 F.2d 516 (11th Cir.), *cert. denied*, 510 U.S. 913 (1993) ("*Papas II*"). Lowe's appeals from the entry of summary judgment on Olin's behalf as well as the district court's denial of Lowe's' motion for leave to amend its first amended complaint. Because we find that *Papas II* is the law of this circuit and is binding upon this court and that the district court did not abuse its discretion in denying Lowe's' motion for leave to amend, we affirm.

I.

Lowe's is a national chain of more than 500 building supply retail stores that sells, among a number of other products, pool chlorinating products manufactured by Olin. One such pool chlorinating product is Pace, of which the active ingredient is cal-hypo, a highly reactive chemical designed to kill bacteria, control algae and destroy organic contaminants in swimming pools. Pace is a strong oxidizing agent that, when burned, results in a significantly accelerated and intense fire. Because of its chemical makeup and resulting dangers, Pace is a registered pesticide with

2

the Environmental Protection Agency ("EPA") as required by FIFRA. In addition to being registered, Pace packages carry EPA-approved labels warning of the product's dangers.

The EPA-approved label on the front of a Pace package states, in pertinent part, "DANGER! Contamination may cause Fire!" and "See precautionary statements on back panel." Further, in addition to general information concerning use of the product and storage and disposal, the back panel of each package provides precautionary language further delineating the hazards and handling of the Pace product. In relevant part, the EPA-approved label provides:

> CHEMICAL HAZARDS: DANGER. Strong oxidizing agent. Mix only into water. Contamination may start a chemical reaction with generation of heat, liberation of hazardous gases, and possible fire and explosion. Avoid any contact with flame or burning material, such as lighted cigarette. Do not contaminate with moisture, garbage, dirt, chemicals including other pool chemicals, pool chlorinating compounds, household products, cyanuric acid pool stabilizers, soap products, paint products, solvents, acids, vinegar, beverages, oils, pine oil, dirty rags, or any other foreign matter.

In addition to the specific warnings contained on the Pace packages themselves, Olin provided Lowe's with additional warnings and information in the form of a publication entitled "Guidelines for the Shipping, Storage and Handling of Olin Pool and Spa Care Products ("Guidelines")." The Guidelines are provided

3

to each of Olin's pool product retail merchandisers even though such Guidelines are not required by FIFRA nor are approved by the EPA.

On April 16, 1996, Lowe's employees discovered a small fire inside of Lowe's' Albany, Georgia store in a pallet of Pace packages on display for sale to its customers. The pallet of the Pace product was located in the same area in the store as where Lowe's stored other Olin branded cal-hypo based pool products. At that time, Lowe's' Albany, Georgia store had approximately 10,000 pounds of cal-hypo based Olin pool products on display. Although the employees attempted to extinguish the fire upon discovering it, they were unable to do so. Therefore, the employees and all of the store's occupants evacuated the building and waited for the local fire department to arrive. However, the nature and intensity of the fire grew quickly, overwhelming the store's automatic sprinkler system and resulting in the destruction of the store and all of its contents prior to the timely arrival of the fire department.

Lowe's filed suit against Olin asserting two claims: (1) negligent design of the Pace product and (2) failure to warn of Pace's dangers. Thereafter, Olin amended its complaint to add a third claim, negligent supervision and training by Olin of Pennington Seed, Inc., Olin's Pace distributor. Following the completion of discovery, Olin moved for summary judgment asserting that each of Lowe's'

4

claims were preempted by FIFRA.  In response, Lowe's conceded that claims concerning deficiencies with the EPA-approved Pace warning labels were preempted by FIFRA but argued that its claims concerned not the Pace warning labels, but rather Olin's common law duty under Georgia law to disclose to its retailers information known only to Olin concerning the propensity of cal-hypo products to burn at such intensity as to overwhelm automatic sprinkler systems. Based upon our decision in *Papas II*, the district court granted judgment in favor of Olin finding that Lowe's claims were preempted by FIFRA.  Lowe's asserts that the district court erred in granting Olin summary judgment on its failure to warn claim.[1]

## II.

We review *de novo* the district court's rulings on motions for summary judgment.  *SCI Liquidating Corp. v. Hartford Fire Ins. Co.*, 181 F.3d 1210, 1212 (11th Cir. 1999) (citing *Maniccia v. Brown*, 171 F.3d 1364, 1367 (11th Cir. 1999)). We must "view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party."  *Maniccia v. Brown*, 171 F.3d 1364, 1367 (11th Cir. 1999) (citing *Stewart v. Happy Herman's*

---

[1] The record reflects through pleadings and at oral argument that Lowe's has voluntarily withdrawn its negligent design and negligent supervision and training claims.

5

*Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted)). Summary judgment is proper where the pleadings, depositions and affidavits demonstrate no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

III.

On two separate occasions this circuit has addressed whether the preemptive reach of FIFRA extends to common law tort claims that challenge the sufficiency of EPA-approved warning labels. On both occasions, we reached the same conclusion holding that FIFRA is sufficiently broad so as to preempt state common law tort claims that question the sufficiency of EPA-approved warning labels. *See Papas v. Upjohn Co.*, 926 F.2d 1019 (11th Cir. 1991) ("*Papas I*"), *vacated*, *Papas v. Zoecon Corp.*, 505 U.S. 1215 (1992), *on remand*, *Papas v. Upjohn Co.*, 985 F.2d 516 (11th Cir. 1993), *cert. denied*, 510 U.S. 913 (1993) ("*Papas II*"). Because our decision here today centers around our previous holdings in *Papas I* and *Papas II*, a discussion of those cases is in order.

The factual background of the *Papas* decisions is set forth in *Papas I*. Those facts reveal that Minas Papas, while working for a local humane society, utilized certain pesticides regulated by the EPA pursuant to FIFRA for purposes of ridding

6

dogs of fleas, ticks and other pests. *Papas I*, 926 F.2d at 1020. Apparently, the use

of the pesticides had a detrimental effect on Minas Papas' health. As such, Minas

Papas and his wife Ollie filed a diversity action in federal district court against

Upjohn Company and Zoecon Corporation sounding in negligence, strict liability

and breach of implied warranty of merchantability. *Id.* Each of the counts,

however, in whole or in part, centered around allegations of insufficient warning

labels. *Id.* Accordingly, the district court granted Zoecon's motion for partial

summary judgment concluding that FIFRA preempted the Papas' claims of

inadequate labeling. *Id.* at 1021.

On interlocutory appeal, this court held that FIFRA impliedly preempted

state common law tort claims for inadequate labeling. *Id.* In so holding, the *Papas*

*I* court analyzed FIFRA and its statutory scheme noting that Congress specifically

delineated the extent to which states could regulate pesticides in § 136v:

> § 136v. Authority of States
>
> (a) In General. A State may regulate the sale or use of
> any federally registered pesticide or device in the State,
> but only if and to the extent the regulation does not
> permit any sale or use prohibited by this subchapter.
>
> (b) Uniformity. Such State shall not impose or continue
> in effect any requirements for labeling or packaging in
> addition to or different from those required under this
> subchapter.

7

*Id.* (citing 7 U.S.C.A. § 136v (West 1980 & Supp. 1990) (subsection headings added by 1988 amendment)).

Based on § 136v, the *Papas I* court concluded that jury awards of damages pursuant to common law tort actions would conflict with FIFRA. *Id.* at 1025. The court then stated:

> For EPA-registered pesticides, the warning and use statements present on the labels indicate that the EPA has determined that those statements are adequate to protect man and the environment: that the pesticide as labeled does not pose any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide. Thus, a jury determination, via a state common tort judgment, that a pesticide's labeling is inadequate results in a direct conflict with the EPA's determination that the labeling is adequate to protect against health risks. Such a jury determination is also in direct conflict with the Congressional intent that *the EPA Administrator* determine the reasonableness of the risks to man and the environment posed by pesticides, at least with respect to the labeling of pesticides.

*Id.* (internal quotes and citations omitted) (emphasis in original). Furthermore, the court noted that common law tort suits for inadequate labeling would hinder Congress' objectives, including uniform labeling across the nation. *Id.*

On appeal to the U.S. Supreme Court, the Supreme Court vacated and remanded the case back to us to decide whether FIFRA expressly preempted the Papas' claims in light of the its decision in *Cippollone v. Liggett Group, Inc.*, 505

8

U.S. 504 (1992), wherein the Court held that there is no need to rely upon the implied preemption doctrine where Congress has enacted an express statutory preemption provision that provides a "reliable indicium of congressional intent with respect to state authority." *Id.* at 517 (citing *Malone v. White Motor Corp.*, 435 U.S. 497, 505 (1978)).

On remand from the Supreme Court, the *Papas II* court considered whether FIFRA expressly preempted state common law tort claims concerning the adequacy of labeling or packaging. The court held that FIFRA did expressly preempt state common law tort claims concerning the adequacy of labeling or packaging. In reaching that conclusion, the court reexamined § 136v and concluded that the term "requirements" in § 136v(b) "sweeps broadly and suggests no distinction between positive enactments and the common law." *Papas II*, 985 F.2d at 518 (citing *Cipollone*, 505 U.S. at 521). Accordingly, the court held that common law damages awards were simply one form of state regulation and were "'requirements' within the meaning of section 136v." *Papas II*, 985 F.2d at 518. Based on that interpretation, the court concluded that "[t]o the extent that state law actions for damages depend upon a showing that a pesticide manufacturer's 'labeling or packaging' failed to meet a standard 'in addition to or different from' FIFRA requirements," FIFRA does expressly preempt such claims. *Id.*

9

The Papases further contended that FIFRA did not preempt claims that pertain to point-of-sale signs, consumer notices, or other information materials unrelated to "labeling and packaging." *Id.* at 519. Based on that argument, the *Papas II* court also had occasion to consider the extent to which FIFRA preempts so-called "off-label" claims. In concluding that off-label claims were also preempted by FIFRA, the court held:

> [A]ny claims that point-of-sale signs, consumer notices, or other information materials failed adequately to warn the plaintiff *necessarily challenge the adequacy of the warnings provided on the product's labeling or packaging*. If a pesticide manufacturer places EPA-approved warnings on the label and packaging of its product, its duty to warn is satisfied, and the adequate warning issue ends.

*Id.* at 519 (emphasis added).

## IV.

In this case, Lowe's contends that its failure to warn claim is not preempted by FIFRA because its claim is completely unrelated to labeling or packaging. Rather, Lowe's asserts that its failure to warn claim is premised upon Olin's withholding of specific information known only to Olin concerning the propensity of cal-hypo products to burn at such intensity so as to overwhelm code-compliant and reasonably designed automatic sprinkler systems. More specifically, Lowe's contends that its claim is outside of the preemptive reach of FIFRA because Olin

10

failed to disclose information concerning the nature and intensity of cal-hypo fires in the Guidelines provided to Lowe's by Olin as well as during a meeting that occurred between Lowe's and Olin on March 21, 1994, the subject of which was Lowe's' handling and storage of the Pace product. Because we reject Lowe's' arguments and find that Lowe's' failure to warn claim is preempted by FIFRA, we will take each of Lowe's' arguments in turn.

A. Guidelines

It is not in dispute that Lowe's was provided with Guidelines concerning the handling, storage and hazards of Olin's pool chemical products in addition to the EPA-approved warning labels on the Pace product prior to the April 16, 1996 fire at Lowe's Albany, Georgia store. Although not required by FIFRA nor approved by the EPA, Lowe's provides the Guidelines to its pool product retail merchandisers. The Guidelines provide information on Olin pool products other than Pace and chemicals other than cal-hypo, however, in all material respects, the information provided in the Guidelines is the same as that provided in the EPA-approved warning labels on the Pace packages. However, where differences between the Guidelines and the EPA-approved warning labels do exist, such differences relate to the increased amount and detail of information provided in the Guidelines. Furthermore, the Guidelines concern additional matters primarily of

11

import to retail merchandisers such as the proper design of storage facilities for the Pace product, transportation and shipping guidelines and the minimum requirements for a retailer's automatic sprinkler system. It is on this last point that Lowe's asserts Olin breached its common law duty of disclosure under Georgia law.

As it turns out, as early as 1969, Olin conducted "burn" tests of the chemical cal-hypo. Additionally, Olin completed substantially similar burn tests in 1976 and 1979. As discussed above, cal-hypo is a strong oxidizing agent which, when burned, results in an extremely intense and hot fire. As a result of the burn tests, Olin learned that when cal-hypo is packaged in plastic, a fire could not be controlled even by an automatic sprinkler system that dispensed one gallon of water per minute per square foot. On the other hand, Olin learned that cal-hypo packaged in a fiber container could be controlled with as little as .20 gallons per minute per square foot, the minimum recommended for any retailer per the Guidelines Olin provided.

Lowe's asserts that Olin never published the results of the 1969, 1976 or 1979 tests nor disclosed such results in its Guidelines. Despite warnings in the Guidelines that contaminated cal-hypo may react violently and result in an intense fire or explosion, that a cal-hypo fire probably would not be contained by a

12

sprinkler system alone and that the fire department must be called, Lowe's argues that Olin breached its duty of disclosure by not disclosing the results of the burn tests. Further, Lowe's argues that Olin was negligent when it recommended a minimum automatic sprinkler system of .20 gallons of water per minute per square foot knowing that such recommendation could not contain a fire involving cal-hypo packaged in plastic, the type of packaging sold to Lowe's. For the following reasons, Lowe's' argument fails.

The crux of this issue centers around whether the Guidelines fall within the purview of FIFRA. If the Guidelines do fall within the purview of FIFRA, then Lowe's' claim is preempted. As stated above, § 136v(b) of FIFRA states that a State "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." 7 U.S.C.A. § 136v (West Supp. 2002). Because we held in *Papas II* that the term "requirements" was sufficiently broad so as to cover jury damages awards and that challenges to warnings on materials other than the label of a product necessarily implies that the warning itself was inadequate, the definition of "label" and "labeling" are critical for the resolution of this issue. If the Guidelines are encompassed within those definitions, *Papas II* controls and Lowe's' claim is preempted.

13

Label and labeling are defined by FIFRA as follows:

> (p) Label and labeling.
>
> (1) Label. The term "label" means the written, printed, or graphic matter on, or attached to, the pesticide or device or any of its containers or wrappers.
>
> (2) Labeling. *The term "labeling" means all labels and all other written, printed, or graphic matter--*
>
> *(A) accompanying the pesticide or device at any time*; or
>
> (B) to which reference is made on the label or in literature accompanying the pesticide or device, except to current official publications of the Environmental Protection Agency, the United States Departments of Agriculture and Interior, the Department of Health and Human Services, State experiment stations, State agricultural colleges, and other similar Federal or State institutions or agencies authorized by law to conduct research in the field of pesticides.

7. U.S.C.A. § 136(p) (West Supp. 2002) (emphasis added). Since the definition of "labeling" seemingly includes the Guidelines as "other written, printed, or graphic matter," unless the Guidelines did not accompany the Pace product at any time, Lowe's' claim is preempted. Accordingly, the second critical inquiry for resolution of this issue concerns the definition of "accompanying."

Lowe's summarily argues that the Guidelines never accompanied the Pace product. However, we find Lowe's advocates an unnecessarily narrow view of the word "accompany" and limits the ability of the EPA to effectively regulate the

14

labeling and packaging of pesticides contrary to Congressional intent and the purpose of FIFRA as discussed in *Papas I* and *II*. On this point, we substantially agree with the Second Circuit in *New York State Pesticide Coalition, Inc., v. Jorling*, 874 F.2d 115 (2d Cir. 1989) wherein that court concluded that "'[l]abeling' is better understood by its relationship, rather than its proximity, to the product." *Id.* at 119. In this case, the Guidelines clearly relate to the storage, handling and hazards of the Pace product, each of which is covered by the EPA-approved label. Further, the Guidelines are not generally made available to the public. Rather, the Guidelines are provided by Olin to its pool product retail merchandisers. Therefore, the Guidelines do "accompany" the Pace product and do constitute "labeling" under FIFRA. As such, any claims concerning the sufficiency of the warnings in the Guidelines are preempted.

B.  Meeting of March 24, 1994.

As an alternative, Lowe's asserts that its meeting with Olin, during which the handling and storage of the Pace product was discussed, provides an independent basis to support its failure to warn claim.  Lowe's argues that Olin was negligent in not disclosing the results of the burn tests and informing Lowe's of the true dangers associated with cal-hypo during the meeting.  Further, Lowe's argues that Olin made specific intentional misrepresentations concerning the manner in which Lowe's should handle and store the Pace product during the meeting that were relied upon by Lowe's to its detriment.  Specifically, Lowe's asserts that Olin representatives told Lowe's' representatives that its handling and storage measures "were good enough" and specifically discouraged Lowe's from moving the Pace product outdoors.  While we share in Lowe's' concerns over the statements made by Olin during the March 21, 1994 meeting, as more fully discussed below, Lowe's did not timely plead alternate theories of misrepresentation and fraud.  As for the assertion that Olin was negligent for failing to disclose additional warning information, we reject that contention and rely on the strong language in *Papas II* which admonished that:

> [A]ny claims that point-of-sale signs, consumer notices,
> or other information materials failed adequately to warn
> the plaintiff necessarily challenge the adequacy of the
> warnings provided on the product's labeling or

16

packaging. *If a pesticide manufacturer places EPA-approved warnings on the label and packaging of its product, its duty to warn is satisfied, and the adequate warning issue ends*.

*Papas II*, 985 F.2d at 519 (emphasis added).

## V.

Lowe's argues that the district court erred when it denied a motion for leave to amend Lowe's' first amended complaint. Apparently, after recognizing the likelihood of an adverse summary judgment ruling, Lowe's attempted to amend its complaint to remove its negligent design and negligent supervision and training claims and to add two additional claims: (1) negligent misrepresentation and (2) fraud. The record in this case reveals that despite numerous scheduling orders and joint stipulations regarding deadlines, Lowe's did not file its motion for leave to amend its first amended complaint until well after all such deadlines had expired and not until over two months following the filing of Olin's motion for summary judgment. In fact, Lowe's did not file its motion for leave to amend until over a month had elapsed from the filing of its response to Olin's motion for summary judgment.

We have held that a district court has great discretion when deciding whether to grant a motion for leave to amend a complaint following the filing of responsive pleadings. *See Henson v. Columbus Bank & Trust Co.*, 770 F.2d 1566,

17

1574 (11th Cir. 1985). Further, we have held that we will reverse a district court for exercising its discretion in this regard only if the abuse of discretion is clear. *Id.* It is not an abuse of discretion for a district court to deny a motion for leave to amend a complaint when such motion is designed to avoid an impending adverse summary judgment. *See Local 472, etc. v. Georgia Power Co.,* 684 F.2d 721, 724 (11th Cir. 1982). Furthermore, it is not an abuse of discretion for a district court to deny a motion for leave to amend following the close of discovery, past the deadline for amendments and past the deadline for filing dispositive motions. *See Hinson v. Clinch County, Georgia Bd. of Educ.*, 231 F.3d 821 (11th Cir. 2000).

Therefore, although a strong argument has been made for a potential claim against Olin for misrepresentation and fraud which might fall outside of the preemptive reach of FIFRA, we do not reach those issues. We agree with the district court's conclusion that, in order to ensure the orderly administration of justice, it has the authority and responsibility to set and enforce reasonable deadlines. Based on the timing and manner in which Lowe's sought to amend its complaint, we simply cannot conclude that the district court clearly abused its discretion in denying Lowe's' motion. Accordingly, we affirm the district court's denial of Lowe's' motion for leave to amend its first amended complaint.

VI.

18

The judgment of the district court is affirmed.

AFFIRMED.