[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 02-15943

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 4, 2004
THOMAS K. KAHN
CLERK

D.C. Docket No. 01-07360 CV-WPD

WAYNE CHARLES OKEN,

Plaintiff-Appellant,

versus

THE MONSANTO COMPANY, THE SOLARIS GROUP,
SCOTTS COMPANY, successor in interest to Monsanto Company
and the Solaris Group, DOW AGROSCIENCES, LLC,
DOW AGROSCIENCES, as successor in interest to DowElanco,
DOWELANCO, as successor in interest to Dow Chemical Company, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 4, 2004)**

Before TJOFLAT and CARNES, Circuit Judges, and CONWAY*, District Judge.

PER CURIAM:

## I.

The Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136-136y ("FIFRA") establishes a comprehensive regulatory scheme for pesticides. Manufacturers of pesticides must obtain Environmental Protection Agency ("EPA") approval of their products and the warning labels accompanying them, which instruct consumers on how to use the product safely. 7 U.S.C. §§ 136a(a), 136a(c)(1)(C). FIFRA contains an express preemption provision: States "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required" by FIFRA. 7 U.S.C. § 136v(b).

In Papas v. Upjohn Co., 985 F.2d 516, 517, 520 (11th Cir. 1993) (Papas II), a damages action for personal injuries sustained "due to exposure to pesticides manufactured by [codefendant] Zoecon," we held that "FIFRA expressly pre-empts state common law actions against manufacturers of EPA-registered pesticides to the extent that such actions are predicated on claims of inadequate labeling or packaging." Such preemption extended to plaintiff's claims based on

---

* Honorable Anne C. Conway, United States District Judge for the Middle District of Florida, sitting by designation.

"negligence, strict liability, and breach of implied warranty," because "[e]ach of these claims was, in whole or in part, a claim of inadequate labeling for alleged dangers arising from exposure to the pesticides." Id. at 517. We therefore affirmed the district court's summary judgment dismissing the plaintiff's claims.

## II.

The case before us mirrors Papas II. Wayne Charles Oken purchased two bags of Ortho Dursban Lawn & Garden Insect Control ("Dursban") from Home Depot U.S.A., Inc. ("Home Depot"). The Monsanto Company ("Monsanto") manufactured the Dursban, and Dow Chemical Company ("Dow") manufactured the product's active ingredient. A warning label approved by EPA, and annexed to this opinion as an Appendix, was attached to the bags Oken purchased.

Oken read the warning label and, using a two-wheeled spreader, spread both bags, one at a time, on his lawn to control ants. As he spread the Dursban, he was exposed[1] to a "mist of powder [that] arose."[2] He soon suffered a reaction, which required extensive hospitalization and treatment.

---

[1] The complaint alleges that Oken "using an appropriate spreader, applied the [Dursban] . . . to his lawn and garden for its intended use, and was exposed to the Dursban product." Complaint, ¶ 23 (emphasis added). Paragraph 23 is the only paragraph of the complaint that describes Oken's contact with Dursban.

[2] Oken asserted this in his Statement of Facts filed in response to the defendants' motions for summary judgment.

The day before the statute of limitations would have barred this action, Oken brought this action for money damages against Dow, Monsanto and Home Depot[3] in a Florida circuit court.[4] His complaint sounded in negligence and strict liability. It alleged that Dow and Monsanto were negligent in designing and manufacturing the Dursban and in composing the warning label attached to the bags, Home Depot was negligent in selling an unreasonably dangerous product, and all three defendants were strictly liable for dispensing an unreasonably dangerous product.

The defendants removed the case to federal district court, and in their answers to the complaint, alleged that FIFRA preempted each of Oken's claims. Following some discovery, they moved the district court for summary judgment. The court granted their motion, concluding that the case was indistinguishable from, and controlled by, Papas II.[5] Oken now appeals.

III.

---

[3] Oken also named numerous parties related to Dow and Monsanto, and "A.B.C. Company," a fictitious entity that was never served and never appeared in this case.

[4] The applicable statute of limitations is provided by Fla. Stat. § 95.11, which states that "[a]n action founded on negligence," and "[a]ny action not specifically provided for in these statutes" shall be commenced within four years of the time the action accrues.

[5] The court granted the defendants summary judgment on Oken's manufacturing defect claim for lack of evidence. Oken does not challenge the ruling in this appeal.

The adequacy of the Dursban warning label is at the heart of this case. Although Oken's complaint sounds in negligence and strict liability, we cannot ignore the critical causation element of each of these torts. For his negligence claims, Oken must show that the defendants' alleged negligence caused his injuries. For his strict liability claims, he must show that the alleged defects in Dursban caused his injuries. Oken cannot escape, however, that his injuries were caused, at least in part, by the alleged inadequacy of the label. If the label had adequately warned him of the dangers of Dursban, he contends, he would not have used the product and would not have been injured. As Papas II instructs, because all of Oken's claims are based at least in part on inadequate labeling, they are all preempted by FIFRA. 985 F.2d at 517.

Oken asks that we overrule Papas II. He argues that the Supreme Court's decision in Medtronic, Inc. v. Lohr, 518 U.S. 470, 116 S.Ct. 2240, 135 L. Ed. 2d 700 (1996), requires that we reevaluate Papas II and find that state-law causes of action based on inadequate warnings are not preempted by FIFRA. However, subsequent to the Supreme Court's decision in Medtronic, we reaffirmed Papas II in Lowe's Home Centers, Inc. v. Olin Corp., 313 F.3d 1307, 1308 (11th Cir. 2002). Because a panel of this court is not free to reconsider an issue decided by a prior panel, United States v. Steele, 147 F.3d 1316, 1317-18 (11th Cir. 1998) (en

5

banc), we are bound by our decision in <u>Lowe's</u>, and must adhere to <u>Papas II</u>.

AFFIRMED.

**ORTHO(R)**
**Dursban(R) Lawn & Garden Insect Control**
FLEA AND TICK CONTROL (Outdoors) SOIL INSECTS - European Crane Fly/Leather Jacket (larvae) and White Grubs.
HOME INVADING PESTS (Outside) - Ants, Brown Dog Ticks, Cockroaches, Clover Mites, Crickets, Earwigs, Fleas, Millipedes, Sowbugs (Pillbugs), Silverfish, Spiders (including Black Widow Spiders).
**HOME LAWNS - Ants, Chinch Bugs, Cutworms, Fall Armyworms, Earwigs, Crickets, Brown Dog Ticks, Fleas, Leafhoppers, Lawn Moths (Sod Webworms), Chiggers, Clover Mites, Grasshoppers, Spittlebugs, Sowbugs (Pillbugs).**

**DIRECTIONS FOR USE**
**It is a violation of Federal law to use this product in a manner inconsistent with its labeling.**

**READ ENTIRE LABEL.  USE STRICTLY IN ACCORDANCE WITH LABEL PRECAUTIONARY STATEMENTS AND DIRECTIONS.**

FLEA AND TICK CONTROL (OUTDOORS)
Treat once a month beginning when pests first appear in late spring (May - June) and continue until late summer (September - October).  Eliminating weeds around the home and mowing lawns frequently reduces hiding places.  Dogs, cats, their kennel or bedding area should also be treated with a registered product such as ORTHO Pet Flea & Tick Spray.  In addition, if fleas or ticks are indoors on carpets or pet resting areas, use a product such as FLEA-B-GON(R) Flea & Tick Killer or ORTHO Home Pest Insect Control.  Treat all three sites - outdoors, indoors, and the pet with appropriate labeled products to achieve control.  If any one of these areas is missed, it can serve as a source of reinfestation.

HOW TO USE: Apply uniformly to home laws using a Drop, Broadcast, or ORTHO WHIRLYBIRD(R) Spreader.  Treat when insects or signs of damage first appear. Retreat as necessary if reinfestation occurs.

Keep children and pets off treated areas until this material is washed into turf and

grass is dry.

TO CONTROL: Ants, Chinch Bugs, Cutworms, Fall Armyworms, Earwigs, Crickets, Brown Dog Ticks, Fleas, Leafhoppers, Lawn Moths (Sod Webworms), Chiggers, Clover Mites, Grasshoppers, Spittlebugs, Sowbugs (Pillbugs): Apply 2½ lbs per 1,000 sq ft (40' x 25'). Immediately after application, give the lawn a light watering. See table below for suggested spreader settings.

Sod Webworms (Lawn Moths): Sod Webworm caterpillars feed on grass blades at night. Adult Webworms (Lawn Moths) emerge at dusk. They fly over the lawn laying eggs that later hatch into destructive caterpillars. Damage appears first as small brown spots which rapidly develop into large brown areas. If Lawn Moths are noticed in large numbers, or at first sign of damage, treat entire lawn.

TO CONTROL: Mole Crickets, Hyperodes (Turfgrass Weevils) European Crane Fly/Leather Jacket (larvae) and White Grubs (larvae of European Chafer, Southern Chafer and Japanese Beetle): Use 5 lbs/1,000 sq ft (see table below). Thoroughly water immediately after application to wash the insecticide into the soil. For Mole Crickets apply in May or June when pests are small. Hyperodes (Turfgrass) Weevils: Treat suspected problem areas in mid-April and again in mid-May. White Grubs: Treat when grubs are young and actively feeding near the soil surface, usually during late July and August. Consult your Agricultural Extension Service Specialist for timing of application.

HOME INVADING PESTS: PERIMETER TREATMENT AROUND FOUNDATION (OUTSIDE) Ants, Crickets, Fleas, Sowbugs (Pillbugs), Millipedes, Earwigs, Clover Mites, Silverfish, Spiders (Incl. Black Widow Spiders), Cockroaches, Brown Dog Ticks: Apply in a band 2 to 6 ft wide around the building using an ORTHO WHIRLYBIRD(R) Spreader. Treat garbage can storage areas and outdoor pet resting areas. Do not treat pests with this product.

[Table omitted]

* One level ORTHO WHIRLYBIRD(R) Hand Spreader holds 2 lbs of product. NOTE: One level measuring cup (8 fl oz) hold 5 ½ oz of granules. Three cups equal approximately 1 lb of product.

[Table omitted]

**STORAGE AND DISPOSAL:**
**STORAGE: Keep pesticide in original container. Do not put into food or drink containers. Avoid contamination of feed and foodstuffs. Store in a cool, dry place, preferably in a locked storage area.**
**DISPOSAL: PRODUCT - Partially filled bag may be disposed of by securely wrapping original container in several layers of newspaper and discard in trash.**
**CONTAINER - DO NOT REUSE EMPTY BAG. Discard bag in trash.**

**PRECAUTIONARY STATEMENTS**
**HAZARDOUS TO HUMANS & DOMESTIC ANIMALS**
**CAUTION: Harmful if absorbed through skin. Avoid contact with skin, eyes, or clothing. Wash thoroughly with soap and water after handling.**

**FIRST AID: In case of skin contact, wash skin with plenty of soap and water. In case of eye contact, wash eyes immediately with plenty of water. See a doctor if irritation persists. Note to Physicians: Emergency information call 1-800-454-2333.**

ENVIRONMENTAL HAZARDS: This pesticide is extremely toxic to fish, birds, and other wildlife. Do not apply directly to water. Drift and runoff from treated areas may be hazardous to aquatic organisms in adjacent aquatic sites. Cover or incorporate spills. Do not contaminate water when disposing of equipment washwaters.

**NOTICE: Buyer assumes all responsibility for safety and use not in accordance with directions.**

Medical Information call 1-800-454-2333
Product Information call 1-800-225-2883

Solaris(TM)

ORTHO(R), WHIRLEYBIRD(R), FLEA-B-GON(R), SOLARIS(TM) Trademarks of Monsanto Company

Dursban(R) Trademark of DowElanco
(C) Monsanto Company 1995

Manufactured for
The SOLARIS Group of
Monsanto Company
P.O. Box 5008
San Ramon CA 94583-0603
Form 8-735-01 / Product 5502
EPA Reg. No. 239-2570
EPA Est 58995-MO-1$^{A}$, 34704-NB-1$^{F}$, 769-GA-1$^{S}$
Superscript is first letter of lot number
Made in USA